**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert J Jackson, et al., | No. CV-21-08085-PCT-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Geneva Lee Jackson, on Behalf of Robert J Jackson, deceased, seeks judicial review of a final decision by the Commissioner of Social Security denying benefits to Robert Jackson. The Court now addresses Plaintiff's Opening Brief (Doc. 22), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 23), and Plaintiff's Reply Brief (Doc. 24).

## I.      BACKGROUND

### A. Factual Overview

Plaintiff's decedent, Robert Jackson ("Jackson") was 44 years old on the alleged disability onset date with a high school education and had work history as a dishwasher, general laborer, and a helicopter salesclerk. (Doc. 22 at 3). Jackson applied for Disability Insurance Benefits on September 4, 2018. (AR 19).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show he "is under a disability." 42 U.S.C. § 423(a)(1) (E). A claimant is disabled if he suffers from a medically

determinable physical or mental impairment that prevents him from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of Factors

At the first step, the ALJ found that Jackson had not engaged in substantial gainful activity since March 2, 2018, the alleged onset date. (AR 21). At the second step, the ALJ concluded Jackson had severe impairments of chiari malformation, degenerative disease, and migraines. (AR 22).

At the third step, the ALJ determined that Jackson's impairments did not meet or equal the criteria in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (AR 24). After evaluating Jackson's RFC, the ALJ concluded that Jackson could perform light work as defined in 20 C.F.R. 404.1567(b). (AR 25). At Step 4, the ALJ further found that Jackson could perform his past relevant work as a retail clerk and fast-food worker. (AR 28–29). Therefore, the ALJ determined Jackson was not disabled. (AR 30).

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

1   1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more
2   than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The
3   Court "review[s] only the reasons provided by the ALJ in the disability determination and
4   may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at
5   1010.

6   **III.   DISCUSSION**

7       Plaintiff argues that the ALJ's RFC was not supported by substantial evidence
8   because the ALJ failed to properly explain why he rejected Dr. Moffat's analysis. (Doc. 22
9   at 12).

10      Jackson filed his application on September 4, 2018. (Doc. 22 at 1). For disability
11  benefits claims filed after March 27, 2017, including the application in the present case,
12  new SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight,
13  including controlling weight, to any medical opinion(s) or prior administrative medical
14  finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c.
15  Instead, an ALJ should determine the persuasiveness of each medical opinion using the
16  following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4)
17  specialization, and 5) any other relevant factors. *Id.* The SSA has explained that
18  supportability and consistency are the most important factors in evaluating an opinion's
19  persuasiveness, and the ALJ must articulate how he considered both factors. *Id.*; Revisions
20  to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017)
21  (codified at 20 C.F.R. § 404).

22      Jackson's treating primary care physician Dr. Moffat estimated that Jackson would
23  be in constant pain while working which would interfere with his work. (Doc. 22 at 14
24  (citing AR 477)). Dr. Moffat estimated that Jackson would "likely be unable to complete
25  an eight-hour workday as often as 5 days per month." (Doc. 22 at 15 (citing AR 481)).

26      The ALJ considered Dr. Moffat's assessment of Jackson's physical limitations,
27  writing:

28          Treating provider, Jeff Moffat, M.D., completed a Physical Residual
            Function Capacity Statement and opined of less than sedentary limitations,

including the need to lie down 2 hours in an 8-hour workday, the ability to sit 1 hour in an 8-hour workday and stand or walk 2 hours in an 8-hour workday. He will need unscheduled breaks, lasting 30 minutes. He can rarely lift 20 pounds. He will be off task more than 30 percent of the day and absent at least 5 days per month (Ex. 10F). This opinion is not supported by the treatment notes. During the relevant period, the claimant underwent a redo surgery for chiari malformation, with noted improvement to his headaches and other symptoms (Ex. 5F/5, 15F/22). Though he reported some periods of increased symptoms, his physical and neurological examinations were largely normal, revealing full muscle strength and tone, with a normal gait (Ex. 1F/3, 4F/30, 5F/9, 13F/13). Imaging of the head and spine, also revealed only mild findings (Ex. 4F/18, 4F/10-11, 4F/6, 4F/8-9, 11F/4). This opinion is not consistent with the remaining opinion evidence, nor with the evidence as a whole. For the preceding reasons, the undersigned finds this opinion is not very persuasive.

(AR 27). The ALJ similarly rejected Dr. Moffat's opinion on Jackson's mental capacity:

Treating provider Jeff Moffat, M.D., completed a Mental Residual Functional Capacity Statement, and opined the claimant's limitations in understanding and remembering detailed instructions, as well as in concentration and memory, precluded him from performing work tasks 15 percent or more of an 8-hour workday (Ex. 10F). This opinion is not supported by the treatment notes. The claimant treated his mental impairments with psychotropic medication, prescribed by his primary care physician (Ex. 9F/2, 15F). The record does not reflect treatment with a mental health care provider (Ex. 9F/2). Additionally, the claimant's mental status examinations were largely normal (Ex. 1F/3, 4F/29-30, 5F/8-9, 15F/34). This opinion is not consistent with the remaining opinion evidence, nor with the evidence as a whole. For the preceding reasons, the undersigned finds this opinion is not very persuasive.

(AR 27).

Plaintiff argues that the ALJ mischaracterized evidence in the record and failed to discuss significant, probative evidence. (Doc. 22 at 16). Plaintiff further argues that the ALJ did not consider the treating relationship or address the supportability of Dr. Moffat's opinion. (Doc. 22 at 17–18). Finally, Plaintiff contends that Dr. Moffat's opinion is consistent with opinion testimony of Dr. Nicol, Dr. Fuller, and Dr. Nakaji, which indicates that Dr. Moffat's opinion is more persuasive. (Doc. 22 at 18–19). Plaintiff asserts that the ALJ's failure to address these issues makes the RFC unsupported by substantial evidence.

(Doc. 22 at 19).

After reviewing the ALJ's decision, the Court concludes that the ALJ did not err in rejecting Dr. Moffat's opinion. The ALJ determined that Dr. Moffat's opinion was inconsistent with the objective medical evidence. While Plaintiff argues the ALJ erred because he did not consider the treatment relationship between Jackson and Dr. Moffatt, (Doc. 22 at 17–18), the ALJ did not have to weigh their relationship. Though treatment relationship is a factor in determining the persuasiveness of a medical opinion, the ALJ considered the factors of supportability and consistency, which are the two most important factors. And an ALJ only must consider the other factors listed in 20 C.F.R. § 404.1520c if "two or more medical opinions . . . are both equally well-supported." 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ explained that Dr. Moffat's opinion was not supported by his earlier treatment notes. (AR 27). While Dr. Moffat's May 2019 opinion said that Jackson required severe physical and mental functional limitations, his treatment notes from a month prior indicated normal examinations. (AR 27). Thus, the ALJ found that "[t]his opinion is not supported by the treatment notes." (AR 27). The ALJ also considered Jackson's response to conservative treatment after each surgery, finding that he "responded well." (AR 26).

Because Dr. Moffat's opinion was inconsistent with his own treatment notes and the objective medical evidence, the ALJ reasonably concluded that Dr. Moffat's opinion was "not supported." (AR 27). Accordingly, under 20 C.F.R. § 404.1520c(b)(3), the ALJ did not have to consider Dr. Moffat's treating relationship with Jackson.

Plaintiff further argues that the ALJ mischaracterized the evidentiary record to find Dr. Moffat's opinion inconsistent with the evidence. (Doc. 22 at 16). "The ALJ's assertion that Claimant's 'physical and neurological examinations were largely normal, revealing full muscle strength and tone' gives a false impression regarding the evidence in this record." (Doc. 22 at 16 (quoting AR 27)).

Yet the ALJ noted that Jackson had severe impairments that would result in "certain limitations." (AR 25). He also said, however, that the overall record did not support a more

restricted "residual function capacity." (AR 25). In making this determination, the ALJ looked at the objective evidence, concluding that Jackson's "physical and neurological examinations were largely normal." (AR 27). He also looked at examinations made by agency consultant examinations by Dr. J. Zuess and Dr. Gregory Hunter that he found "more consistent with the evidence as a whole." (AR 27). Essentially, Plaintiff claims that the ALJ should have interpreted the evidence differently. But where "evidence is susceptible to more than one rational interpretation," the "ALJ's conclusion must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, Plaintiff notes that Dr. Moffat's opinion is consistent with the opinions of three other doctors. (Doc. 22 at 18–19). As the Court reads the ALJ's decision, the ALJ found Dr. Moffat's opinion consistent with the medical evidence related to Jackson's impairments. And the ALJ considered the impairments observed by Dr. Moffat and used them in assessing Jackson's residual functional capacity. (AR 22, 24).

But, as discussed above, the ALJ found that Dr. Moffat's opinion on the severity of the impairments to be unsupported by the objective medical evidence. The other medical opinions that Jackson argues are consistent with his opinion do not go to the severity of the impairments; but rather, go to the existence of impairments. *See* (Doc. 22 at 16–17). The Court thus does not see how such opinions are relevant to the ALJ's decision to discount Dr. Moffat's opinion.

In sum, the Court finds that the ALJ's decision is supported by substantial evidence supports. Accordingly, the Court will affirm.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 14th day of June, 2022.

James A. Teilborg
Senior United States District Judge